THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK ERICKSON, Appellant.

Argued April 11, 1951; decided May 24, 1951.

*Edward J. Bennett* and *Harold H. Corbin* for appellant. I. The sentences on counts 3 to 60 were unauthorized because book-making is a continuous crime involving professional operation of a business. Each bet does not constitute a separate crime. The plea of guilty, therefore, authorized but one sentence on the substantive charge of book-making. (*People ex rel. Lichtenstein* v. *Langan,* 196 N. Y. 260; *People* v. *Laude,* 81 Misc. 256; *Watts* v. *Malatesta,* 262 N. Y. 80; *People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Bright,* 203 N. Y. 73; *Hortel Products Corp.* v. *Prudential Ins. Co.,* 290 N. Y. 44; *People* v. *Kelly,* 152 Misc.

372; *Crepps* v. *Durden,* 2 Cowp. 640;·*Mayor of City of N. Y.* v. *Ordrenan,* 12 Johns. 122; *Apothecaries Co.* v. *Jones,* [1893] 1 Q. B. 89.) II. Section 2190 of the Penal Law is unconstitutional insofar as it authorizes cumulative sentences extending beyond one year by a court of special sessions upon a single information. (*People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *People* v. *Faden,* 271 N. Y. 435; *People ex rel. Gordon* v. *Ashworth,* 290 N. Y. 285; *People* v. *Bellinger,* 269 N. Y. 265; *People ex rel. Kipnis* v. *McCann,* 199 App. Div. 30; *People* v. *Kaminsky,* 208 N. Y. 389; *People ex rel. Comaford* v. *Dutcher,* 83 N. Y. 240.)

*Frank S. Hogan, District Attorney* (*Richard G. Denzer* of counsel), for respondent. I. The information charged sixty different crimes and the separate sentences imposed were valid and proper. (*People* v. *Corbalis,* 178 N. Y. 516; *People ex rel. Fifth Ave. Bldg. Co.* v. *Williams,* 198 N. Y. 238; *People* v. *Cox,* 286 N. Y. 137; *People* v. *Devinny,* 227 N. Y. 397; *State* v. *Cotner,* 87 Kan. 864; *Commonwealth* v. *Respass,* 21 Ky. L. Rep. 140; *People* v. *Tower,* 135 N. Y. 457; *People* v. *Dileo,* 194 App. Div. 793.) II. Section 2190 of the Penal Law is not rendered unconstitutional by the fact that it empowers the court of special sessions to impose cumulative sentences aggregating more than one year of imprisonment under a multiple-count information. (*People ex rel. Gordon* v. *Ashworth,* 290 N. Y. 285; *People* v. *Bellinger,* 269 N. Y. 265; *People ex rel. Pincus* v. *Adams,* 274 N. Y. 447; *People* v. *Faden,* 271 N. Y. 435; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559.)

DESMOND, J. Defendant pleaded guilty in a Court of Special Sessions of the City of New York to each of the sixty counts of an information. The first of those counts charged a conspiracy to violate section 986 of the Penal Law (the " book-making " statute). Each of the following fifty-nine counts alleged a violation of section 986. Defendant was, thereafter, sentenced, on each of the first two counts, to imprisonment for one year in the penitentiary and a $500 fine, or in default of payment of the fine, thirty days additional in the city prison. On counts 3, 4 and 5, he was, in each instance, given the same sentence as for counts 1 and 2, except that the penitentiary sentence was suspended. On each of the other fifty-five counts, the punishment

was a $500 fine with thirty days' imprisonment in default of payment thereof. In other words, the total sentence, on all sixty counts, was five years' imprisonment with the last three years thereof suspended, and $30,000 in fines. Defendant-appellant's principal contentions are two, both of which were made by him, and rejected, at the time of sentence. First, he argues that section 986 penalizes not separate acts of, or in connection with, gambling, but only the operating of a book-making business, and that, accordingly, the nonconspiracy counts in the information (numbers 2 to 60) charged not fifty-nine crimes, but one crime, and could result in one sentence only. His second point is, that if these were sixty different crimes, then section 2190 of the Penal Law authorizing separate consecutive sentences on those sixty counts, is unconstitutional as violating these parts of our State Constitution: article I, section 2 (jury trial), article I, section 6 (indictment), and article VI, section 18 (jurisdiction of inferior courts). Those positions of defendant-appellant will be dealt with separately herein.

Section 986 of the Penal Law is a long statute which makes guilty of a misdemeanor a person who is guilty of any one of a number of different kinds of activities and acts. Defendant would have us construe the section as if it merely prohibited the engaging in book-making, and as if all the rest of the statutory language was merely explanatory of what the Legislature meant by " book-making ". In other words, defendant says that this is the kind of criminal statute which penalizes not the separate doing of separate acts, but the pursuit of a business, the habitual and regular doing of certain acts as an occupation or pursuit, citing *Crepps* v. *Durdon* (2 Cowp. 640); *Apothecaries Co.* v. *Jones* ([1893] 1 Q. B. 89); *Mayor of City of N. Y.* v. *Ordrenan* (12 Johns. 122); *Matter of Snow* (120 U. S. 274); *Ex Parte Nielsen* (131 U. S. 176). But those decisions are not controlling or determinative here, since, in each of them, the statute, or part of a statute being construed, made criminal a habitual course of conduct, not specific described acts. If section 986 were, as defendant says it is, merely a prohibition against " engaging " in book-making, then defendant, under the authorities just above cited, would probably be right. But he puts too much stress, it seems to us, on the first separate part of section 986 which provides punishment for: " Any person who engages in pool-selling,

or book-making with or without writing at any time or place '';
and treats all the rest of the statute as being merely descriptive
or definitive of that first phrase. We do not think the statute
should be so read. Following the wording just above quoted, it
contains a series of other descriptions of forbidden acts and
activities, each being stated disjunctively, that is, tied to each
other by the conjunction "or". Those added prohibitions
describe such conduct or acts as the following: keeping or occu-
pying a room for recording bets; recording bets; receiving
money wagers; permitting the use of a room for recording bets;
becoming the custodian of money wagered; or aiding or assist-
ing in any of the above listed acts. The statute, therefore, is
much more than a statement that engaging in "book-making"
is a misdemeanor, with particulars as to what constitutes "book-
making". It is, rather, a listing of a number of different kinds
of acts or conduct, all of them related to "book-making", but
each of which is, separately, made a misdemeanor. Since such
is the meaning of the statute, it is clear that the information
here, which we analyze in the next paragraph hereof, charges
sixty different crimes.

The first count here charges a conspiracy continuing from
1930 up to 1950, to engage with others in book-making, in viola-
tion of section 986, the overt acts alleged being eighty-five in
number and including the receipt, custody and payment of bets
on various dates in 1948, 1949 and 1950. (Some of the acts
described in counts 2 to 60 are the same ones which are alleged
as overt acts in the first or conspiracy count.) Counts 2 to 60
are identical except for dates and each accuses defendant, on a
certain date, of the crime of "BOOKMAKING, committed as
follows: * * * engaged in bookmaking and made book
upon the results of trials and contests of skill, speed and power
of endurance of men and beasts, to wit, horse races, and received,
forwarded and became the custodian and depositary for gain,
hire and reward of $——, money bet and wagered by and for
other persons, and aided, assisted and abetted in said acts.''
In other words, each nonconspiracy or substantive count accuses
defendant, on a specific separate date, with receiving, for-
warding and being the custodian of, money wagered. The ref-
erence in each such count to "bookmaking" is, in a way,
surplusage, since the remaining language alleges a complete

crime under the statute. It follows that this information charges one conspiracy to violate, and fifty-nine different separate violations of section 986.

Besides arguing as above, defendant goes further and insists that, regardless of how many separate crimes his guilty plea covered, he could not be visited with punishment more severe than one year's incarceration in the penitentiary, and one $500 fine. In substance, defendant is saying that, if section 279 of the Code of Criminal Procedure, allowing the joinder in one information of several crimes, and subdivision 4 of section 2190 of the Penal Law, permitting separate sentences for each such crime, are construed to permit a court of special sessions to impose, for a number of misdemeanors charged in the same information, successive sentences totaling more than one year and $500, then, according to defendant, those statutes are unconstitutional. For they violate, he says, not only section 2 of article I of the State Constitution, which declares the right to a jury trial, and section 6 of article I, which requires that infamous crimes be charged by indictment only, but also section 18 of article VI, which limits to offenses '' of the grade of misdemeanors '', the jurisdiction of courts of special sessions. Defendant says that those provisions of our State Constitution mean that this New York City Court of Special Sessions, acting on an information rather than on an indictment, and affording no jury trial, could not impose, for a guilty plea or verdict on one information, a sentence more severe than the maximum assigned by law to a misdemeanor, that is, one year in a county jail or penitentiary and a $500 fine (Penal Law, §§ 2, 29, 1937).

It is, of course, settled that those provisions of the New York Constitution (art. I, §§ 2, 6), which require indictment by a grand jury and give defendant a right to a trial by jury, do not apply to offenses for which the maximum punishment is no more than one year in a penitentiary plus a maximum $500 fine and which are triable, according to statute, by a court of special sessions (*People* v. *Bellinger,* 269 N. Y. 265, 270, 271). Therefore, if the statutes here being examined (Code Crim. Pro., § 279; Penal Law, § 2190) purported to authorize a trial on an information in a court of special sessions without a jury, of a criminal offense carrying heavier punishment than that assigned to misdemeanors, the statutes would to that extent be uncon-

stitutional. But neither statute has any such result. Section 279 of the code allows, among other things, the joining in one information or indictment of two or more acts constituting a part of a common scheme or plan (as the information here alleges). Subdivision 4 of section 2190 of the Penal Law, added at the same time that section 279 of the code was amended to read as above, permits the imposition of separate and consecutive sentences on a person convicted of two or more offenses which constitute different crimes but have been set forth in separate counts of one indictment or information. Both statutes as so amended are constitutional (*People ex rel. Pincus* v. *Adams,* 274 N. Y. 447). They do not " permit the imposition of a greater sentence for any crime " (p. 457). Read together, they merely provide that a number of related offenses may be covered by the same indictment or information, and that for each such count on which a defendant is found guilty, he may receive a separate and cumulated sentence. The acts to which this defendant has here pleaded guilty could have been charged against him in sixty separate informations, and he could have received sixty separate, consecutive, sentences, each up to the maximum limit for a misdemeanor. We do not see how any right of his has been invaded, or how the constitutional jurisdiction of the Special Sessions Court is in any way enlarged by allowing all this to be done under one, rather than under sixty, informations.

The judgment should be affirmed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.