OPINION OF THE COURT
Simons, J.
In Matter of Johnson v Morgenthau (69 NY2d 148), we determined that criminal possession of a weapon in the third degree was a continuing crime. We found, therefore, that although the defendant had unlawfully possessed a weapon in The Bronx and Manhattan during a continuous six-day period only one crime had been committed. As a result, double jeopardy principles prohibited New York County from prosecuting him for criminal possession of a weapon in the third degree after he had been placed in jeopardy for the same crime in Bronx County. In the matter before us, defendant has been separately charged and convicted of criminal possession of a weapon in the second degree as a result of incidents occurring approximately an hour apart, one in Bronx County and the other in New York County. He contends that second degree possession is also a continuing crime and that his later New York County conviction must be set aside on double jeopardy grounds. The crimes of second and third degree criminal possession of a weapon differ significantly, however. Third degree, examined in Johnson (supra), is defined by reference to dominion and control, whereas second degree requires a specific intent, the “intent to use the same unlawfully against another” (Penal Law § 265.03). Thus, second degree is a continuing offense only as long as a defendant possesses the weapon intending to use it against a particular person or group of persons. If that intent abates, the crime is completed, even though defendant continues to possess the weapon, and a subsequently formed intent while possessing the weapon results in the commission of a second offense. In this case, defendant’s possession of the weapon was continuous but the intent with which he possessed it was separate and discrete in the two charged incidents. He thus committed two offenses and could be prosecuted for both.
I
These charges arose when defendant, a Nigerian immigrant, *84 went to the apartment of his estranged wife late one night intent on killing her because he believed she was having an affair with his son by a former marriage. The police had arrived in answer to a call but before they could stop defendant, he shot his wife three times with a .38 caliber pistol then fled out a window and down a fire escape to his waiting car. Once in the car defendant headed for his son’s apartment intending to shoot him as well. He abandoned that idea before reaching the apartment and decided to return home and kill himself.
Defendant reached his Manhattan apartment about an hour after the killing to find the police waiting in the hallway outside. They ordered him to "freeze” but, in an attempt to escape, defendant pulled out his gun and aimed it at one of the officers. Before he could fire, the police shot and wounded him and placed him under arrest. Ballistics tests revealed that the gun taken from defendant by the police was the one he had used to shoot his wife and that he had reloaded it after killing her.
Bronx County authorities indicted defendant for murder in the second degree, criminal use of a weapon in the second degree and criminal possession of a weapon in the second degree for the shooting of his wife. He was convicted after trial of second degree manslaughter and second degree criminal possession of a weapon and sentenced to a 5-to-15-year term of imprisonment. The judgment was affirmed by the Appellate Division.
While the Bronx County case was proceeding, defendant was indicted in New York County for second and third degree criminal possession of a weapon based on his threatened use of the handgun against the police officers at his Manhattan apartment. After he was convicted of second degree possession in Bronx County, defendant moved to dismiss the New York County prosecution claiming that it was barred by the double jeopardy protections of the Federal Constitution and CPL article 40. His motion was denied and he pleaded guilty to criminal possession of a weapon, second degree, and was sentenced to a 2-to-6-year term to run consecutively with the term imposed on the Bronx County conviction. The Appellate Division affirmed and a Judge of this court granted leave to appeal. We now affirm.
II
Defendant maintains that because his possession of the gun *85 between the time he killed his wife in The Bronx and his display of the weapon in Manhattan was uninterrupted, the crime he committed in New York County was simply a continuation of the possessory offense he committed in The Bronx. He thus contends the Bronx and New York County authorities both indicted him for the same crime and that under the "continuous offense doctrine” his Bronx County conviction should have barred the New York County prosecution. If indeed only one continuing second degree offense were involved here, then the New York County prosecution would be barred by the Double Jeopardy Clause[1] of the United States Constitution which protects an accused against a second prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense (see, US Const 5th, 14th Amends; Ohio v Johnson, 467 US 493, 498, reh denied 468 US 1224; Brown v Ohio, 432 US 161, 165; Matter of Johnson v Morgenthau, supra, at 150).
The question whether the continuous offense doctrine should be applied arises most clearly in cases, such as this one, where the defendant is charged with repeated violations of a single statute. The doctrine dates back to the English case of Crepps v Durden (2 Cowp 640 [KB]) which held that the baker’s sale of four loaves of bread on one Sunday contrary to the "blue laws” constituted one continuing offense, not four separate ones. The Crepps rationale was incorporated into our law of double jeopardy by the Supreme Court in the case of In re Snow (120 US 274) which concluded that the defendant’s marriage to more than one wife over a period of years could only support one prosecution for unlawful cohabitation because of the continuing nature of the offense (see also, United States v Universal Corp., 344 US 218; Ex Parte Nielsen, 131 US 176). More recently, the Supreme Court applied the continuing offense doctrine in Brown v Ohio (432 US 161, supra), holding that the crime of joyriding — taking or operating a vehicle without the owner’s consent — was a continuing *86 offense commencing when the defendant stole the car and continuing as long as he retained it. Because joyriding was a lesser included offense of theft, the court held that defendant’s theft and nine-day possession of the vehicle could support only one prosecution and his conviction for joyriding barred a later attempt to prosecute him for theft.
We applied the continuing offense doctrine in Matter of Johnson v Morgenthau (69 NY2d 148, supra). The defendant in Johnson had continually possessed a handgun for six days and carried it from Bronx County to New York County during that time. The question was whether he could be prosecuted by both the Bronx and New York County authorities for criminal possession of a weapon in the third degree under Penal Law § 265.02 (4). We held that because criminal possession of a weapon in the third degree was defined purely in terms of dominion and control (see, Penal Law § 10.00 [8]), it was a continuing offense and that defendant’s prosecution for it in Bronx County barred the subsequent New York County prosecution.[2] In so holding, we recognized that the Legislature could have subdivided third degree criminal possession of a weapon into temporal or spacial units enabling continuous conduct to support multiple prosecutions but that it had not done so.
It is helpful to compare these cases, in which the continuous offense doctrine was invoked, with others in which it was not, cases such as Blockburger v United States (284 US 299) which involved narcotic sales, and People v Erickson (302 NY 461) which involved bookmaking. In both those cases, defendants contended that their offense consisted of only one crime, engaging in a prohibited "business”. The courts held, however, that the crimes were not continuous offenses but that each sale of narcotics and each bet received constituted a new offense. In so holding, each court looked to the intent underlying the statute to determine whether the legislative purpose was to prohibit a course of conduct or specific described acts (see, Blockburger v United States, 284 US 299, 304, supra; *87 People v Erickson, 302 NY 461, 464, supra). In making that analysis, the Blockburger court found it significant that the charged conduct was not the product of one "impulse”, permitting only one prosecution no matter how long the action may continue, but successive and distinguishable impulses, each able to support a separate charge (284 US, supra, at 302). The two narcotic sales in Blockburger occurred a day apart but in finding that they were triggered by separate impulses and thus separate crimes, the court cited with approval an earlier case, Ebeling v Morgan (237 US 625), in which the separate offenses occurred only minutes apart (id., at 303). It was the separate "impulses” not the time interval betwéen the acts which was dispositive in the court’s determination.
Penal Law § 265.03 defines criminal possession of a weapon in the second degree as possession of "a machine-gun or loaded firearm with intent to use the same unlawfully against another” (emphasis added). Thus, unlike the third degree possession statute construed in Matter of Johnson v Morgenthau (69 NY2d 148, supra) which defines the crime solely in terms of dominion and control, the statute defining second degree possession contains a specific intent element as well. By means of this element, the Legislature divided the duration of the offense into periods during which the defendant harbors a particular intent. We indicated that it could do so in Matter of Johnson (see, 69 NY2d 148, 152, supra). Second degree possession may theoretically encompass a continuing course of conduct because, like possession, intent may be durational in nature (see, People v Pons, 68 NY2d 264, 268), but unlike third degree, which continues throughout the time of possession, second degree spans only the period during which defendant possesses the weapon and harbors the unlawful intent to use it against another. If either element lapses, the crime is complete. A discrete crime is committed when the defendant, having retained possession of the weapon, later forms a new criminal intent.
III
Applying these principles to the present appeal, we conclude that under the circumstances of this case defendant committed two separate offenses. His possession of the handgun was uninterrupted, but his intent constantly changed during that one-hour period. Initially he intended to kill his wife and after doing so, he left to shoot his son. He subsequently abandoned *88 that plan and returned to his apartment with the intention of taking his own life. This new intention provided a break in the continuing nature of the crime, even if the other change did not, because the intent to commit suicide cannot support a prosecution for second degree criminal possession of a weapon; the statute requires an intent to use the weapon against another (see, Penal Law § 265.03). Thus, even if it be contended that defendant had but one intention, to use the gun against his wife, his son and anyone who tried to stop him, the crime had abated by the time defendant returned to his apartment in Manhattan because at that time he had formed a new intent, to kill himself, and in the words of Blockburger, the initial "impulse” had subsided. When later confronted by the police in Manhattan, however, defendant became chargeable with another count of second degree criminal possession because while possessing the gun he manifested the newly formed intent to use it against them.
Defendant next contends that his threatened use of the gun in Manhattan should be deemed a continuation of his second degree possession of it in The Bronx even if his intent to unlawfully use the gun was curtailed between the two episodes. This is so, he claims, because the two separate incidents were linked by a period in which he committed third degree possession. Defendant thus maintains that because he was continually committing a possessory offense, albeit not the second degree offense of which he was twice convicted, he should only have been subjected to one prosecution for his possession of the weapon.
He bases his argument on the Johnson case in which the People contended the defendant’s six-day possession of a weapon could support two prosecutions for third degree possession of a weapon because during that period the defendant took the weapon home. Thus, they claimed, Johnson was not continually committing the third degree offense because possession of a weapon at one’s home or place of business constitutes fourth degree possession. We rejected the argument, finding that the gist of the offense was simple possession and that both statutes reflected the legislative goal to criminalize that conduct although in different degrees depending on where it occurred. Accordingly, we held that even if the defendant took the gun home for a time — and was only guilty of fourth degree possession during that period — the continuing nature of the offense was not interrupted and only one prose *89 cution was permissible.[3] The irrationality of any other result was noted by our citation to United States v Jones (533 F2d 1387, cert denied 431 US 964) which involved defendant’s continuing three-year possession of a weapon. If simple possession were not a continuing offense, defendant in that case would have been exposed to over 1,000 counts of unlawful possession. No similar problem arises when the Legislature divides the crime into special or temporal units, by defining each day of continuing conduct as a separate offense (see, ECL 71-4001 [b]) or by reference to several elements, some of which are of limited duration.
Manifestly, the Legislature was seeking to prohibit something more than simple possession when it enacted Penal Law § 265.03 by focusing on the intent to use the weapon (see, People v Almodovar, 62 NY2d 126, 130 [unlawful intent renders possessory crime more serious]; see generally, Hechtman, Practice Commentary, McKinney’s Cons Law of NY, Book 39, Penal Law §265.03, at 475). The offense is fundamentally different from third or fourth degree possession because divided into temporal units measured by the presence of the required intent. The "essence” of it is not possession but the intent to use the weapon against another and the offense should not be equated to simple possessory offenses for double jeopardy purposes to "bridge” episodes of second degree possession into a single offense. Inasmuch as two criminal intents are discernible, constituting discrete culpable events and not a single continuing one, each could be separately prosecuted.
The dissent states that a weapon may be possessed with a single intent, to injure several people, and analogizes the crime to a single conspiracy to commit several offenses (citing Braverman v United States, 317 US 49). If defendant’s intent is directed to one or more of a group of people, it indeed may *90 be that only one offense is committed. But if the original unlawful intent is abandoned and subsequently a new intent is formed to use the weapon against others during the period of possession, more than one crime is committed. The apt analogy in that circumstance is to discrete illegal agreements constituting more than one crime of conspiracy (cf., Braverman v United States, supra, at 52-53).
Nor does the court’s interpretation punish "bad thoughts” as the dissent contends (citing to 1 LaFave & Scott, Substantive Criminal Law §3.2 [b], at 273). The combination of defendant’s unlawful possession of a weapon and his intent to use it against another constitutes a crime, not the punishment of "bad thoughts”. That combination existed twice in this case and justifies separate prosecutions.
Accordingly, the order of the Appellate Division should be affirmed.

. Because he pleaded guilty to the New York County charges, defendant forfeited his claim that the New York County prosecution was barred by the expanded double jeopardy protections set forth in CPL article 40 (see, People v Prescott, 66 NY2d 216, 218, cert denied 475 US 1150). He has never claimed the prosecution was barred by the double jeopardy provision in the New York Constitution (see, NY Const, art I, § 6). Accordingly, our inquiry is limited to whether defendant’s Federal constitutional rights were violated (see, People v Prescott, supra).

. The defendant in Johnson pleaded guilty in Bronx County to attempted second degree criminal possession of a weapon, but his plea was in satisfaction of all charges in the Bronx County indictment, including the charge of criminal possession of a weapon in the third degree. Before this court, defendant argued that having once been prosecuted for third degree possession in Bronx County, he could not thereafter be charged with the same crime in New York County. We agreed and found that the New York County prosecution for third degree possession was barred.

. We indicated in Matter of Johnson v Morgenthau (69 NY2d 148) that the fourth degree offense was a lesser included crime of the third degree offense. Our point was simply that the two crimes should be deemed the same for double jeopardy purposes (see, People v Llewelyn, 136 Misc 2d 525, 531; see also, Costarelli v Commonwealth, 374 Mass 677, 373 NE2d 1183). We did not mean to suggest that fourth degree possession of a weapon constituted a lesser included offense of the third degree crime within the narrow definition of lesser included offenses set forth in CPL 1.20 (37) (see, People v Rodriquez, 68 NY2d 674, revg on dissent at 113 AD2d 337, 343-348). With respect to this appeal it should be noted that third degree possession of a weapon is not a lesser included of the second degree offense (see, People v McGriff, 123 AD2d 646; see also, People v Rodriquez, supra; People v Ali, 36 NY2d 880; see generally, People v Glover, 57 NY2d 61).