THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISABEL
LLANOS, Appellant.

First Department, October 26, 1989

---

## APPEARANCES OF COUNSEL

*Jonathan A. Willens* of counsel *(Ira Mickenberg,* attorney),
for appellant.

*Julie Freudenheim* of counsel *(Mark Dwyer* and *Beth J. Thomas* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

WALLACH, J.

The boy who cried "Wolf!" has earned the deserved scorn of the world, and Justice Holmes took a dim view of the man who falsely yelled "Fire!" in a crowded theatre.* This case calls upon us to decide with what degree of severity we should treat a woman like defendant who shouts "Police! Police!" not for the purpose of obtaining succor for herself or another, but rather to alert evildoers to the imminent arrival of the Law.

Following a bench trial, Criminal Term has found defendant to be a criminal facilitator in the fourth degree, and that is to say, a class A misdemeanor. The evidence adduced by the People in support of this conviction is of the briefest compass, the entire testimonial record consisting of one witness contained in 10 pages of transcript for both direct and cross-examination. This sole witness, Detective Joe Pistocchi, of Manhattan North Narcotics Division, testified that on April 2, 1986, at 4:30 P.M., he was in the company of several other officers executing a search warrant at 4 West 108 Street, apartment 14, in Manhattan. Targeted apartment 14 was on the fourth floor of the multiple dwelling. While ascending the stairs from the third floor to the fourth floor, the detective saw defendant peering out over the banister. As the officers reached the fourth floor, defendant rushed over to the doorway of apartment 14 and yelled, "Police! Police!" while knocking at the door. Defendant was immediately placed under arrest outside the apartment in the hallway. The police then opened the unlocked door of the apartment, arrested its five male occupants, and after a search recovered a large quantity of cocaine, 256 vials of crack, a quantity of drug paraphernalia consisting of an Ohaus triple beam scale, precut tinfoils, baggies and playing cards used to sift and sort powder. Concededly, defendant never entered the apartment, nor was any evidence adduced that she was a tenant thereof, or that she had any employment or ownership interest which would impose a duty upon her to enter it.

The court found defendant guilty of criminal facilitation in

---

* *Schenck v United States,* 249 US 47, 52.

the fourth degree pursuant to Penal Law § 115.00 (1) which provides as follows:

"A person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid:

"1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony".

Essentially, this offense contains three elements: (1) a state of mind of defendant believing it probable that he is rendering aid to a person who intends to commit a crime; (2) defendant's engagement in conduct which provides that person with the means or opportunity for commission of that crime; and (3) defendant's conduct in fact aids that facilitated person to commit a felony.

The People's evidence failed to establish any one of these elements as a matter of law. Inasmuch as element No. 1 refers to "a person who *intends to commit* a crime", and element No. 2 refers to providing the facilitated person "with the *means or opportunity for the commission* of that crime", clearly, the statute contemplates that the facilitated crime must occur in the future, *after* the intervention of the facilitator. Such is the teaching of *People v Gordon* (32 NY2d 62, 64-65) as follows: "The type of situation contemplated and envisaged by the section [Penal Law § 115] is clearly one involving assistance, of the indicated nature, by the defendant to a person who, at the time of such assistance or facilitation, not only intends to commit a crime but who *subsequently* does commit it in a felonious form" (emphasis added; to the same effect, *see, People v Johnson,* 66 NY2d 398, 404, *and People v Beaudet,* 32 NY2d 371, 377).

In *Gordon,* the Court of Appeals gave three useful illustrations of the crime of facilitation in the fourth degree, citing the Denzer and McQuillan commentary to Penal Law § 115 *(supra,* at 65): "(1) a person 'sells a gun to a man who he knows intends to use it to kill his wife' or (2) the telephone company 'provides telephone service to a person with knowledge that he intends to use it for bookmaking purposes' or (3) a night watchman for a warehouse 'looks the other way when he sees his burglar friend about to break into the warehouse.' "

Thus, in all three examples the underlying felony—murder, bookmaking or burglary—*follows* the act of the facilitator.

Such is the settled timetable for the crime of facilitation *(People v Arcadi,* 79 AD2d 845, *affd* 54 NY2d 981), which sequence cannot be found in this case. At the time of defendant's shrill warning the felony of drug and paraphernalia possession by the five occupants of apartment 14 was complete, without reference to any additional act or action by defendant.

The People argue that the illegal possession of contraband is an ongoing crime, citing *People v Okafore* (72 NY2d 81) and *Matter of Johnson v Morgenthau* (69 NY2d 148). But even with that assumption, there was no proof that defendant furnished "the means or opportunity for commission of that crime". And, finally, with respect to element No. 3, there is absolutely no showing that defendant's conduct *"in fact"* aided the occupants of the apartment in possessing the contraband since defendant's action utterly failed to impede or delay police entry into apartment 14, an event which brought the criminal enterprise to an abrupt termination.

The People also urge that defendant acted as a lookout for the apartment occupants. If that had been established as defendant's role, she could have been found guilty of the underlying felony as an accessory pursuant to Penal Law § 20.00, and amenable to treatment as a principal participant in the underlying offenses, as well as being guilty as a facilitator. A lookout, in addition to being liable as an accessory, has also engaged in conduct which provides the person intending to commit a crime (here the possessor of the narcotics) with the "means or opportunity for the commission thereof and which in fact aids such person to commit a felony" (Penal Law § 115.00 [1]). Certainly, the illegal possession of contraband is no less an ongoing crime than is the criminal possession of a weapon *(see, People v Okafore,* 72 NY2d 81, *supra; Matter of Johnson v Morgenthau,* 69 NY2d 148, *supra).* But defendant was not charged as an accessory in the indictment. And the record here is devoid of any proof linking defendant to the apartment occupants, and thus the lookout theory does not avail the People to sustain this conviction.

Accordingly, the judgment of the Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered January 8, 1988, convicting defendant, after a bench trial, of criminal facilitation in the fourth degree and sentencing her to time served, should be reversed, on the law, and the indictment dismissed as to her.

Ross, J. P., Carro, Milonas and Rubin, JJ., concur.

Judgment, Supreme Court, New York County, rendered on January 8, 1988, unanimously reversed, on the law, and the indictment dismissed, as to appellant. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.