OPINION OF THE COURT
Deborah Stevens Módica, J.
The defendant is charged in an information with attempted criminal contempt in the second degree (Penal Law §§ 110.00, 215.50 [3]) and aggravated harassment (Penal Law § 240.30 [1]) for conduct which occurred on October 31, 1999. It *369 is alleged, that such conduct was in violation of an order of protection issued by a Family Court Judge, presiding over a domestic dispute action between the defendant and his child’s mother, the complaining witness. The defendant now moves to dismiss the charge of attempted criminal contempt in the second degree on the ground that it is defective within the meaning of CPL 100.15. Specifically, the defendant argues that dismissal is required since this count fails to allege an essential element of the crime.
Penal Law § 215.50 (3), in pertinent part, provides that a person is guilty of criminal contempt in the second degree when he/she engages in the following conduct:
“Intentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three-a of the judiciary law.”
According to the defendant, neither the accusatory part nor the factual portion of the information allege that this case did not involve or grow out of a labor dispute, an essential element of the crime the People were required to plead and prove. There is support for the defendant’s claim that the “labor dispute” language of Penal Law § 215.50 (3) is an element of the crime. As the defendant notes, the Appellate Division, Third Department, has interpreted this language to be an element of the crime. (See People v Kirkham, 273 AD2d 509 [3d Dept 2000].) This is based on the principle stated in People v Kohut (30 NY2d 183 [1972]) that whenever a statute defining a crime contains an exception, that exception is an element of the crime. “But when the exception is found outside the statute, the exception generally is a matter for the defendant to raise in defense, either under the general issue or by affirmative defense.” (See People v Kohut, supra, at 187.) Although this Court does not agree with the result reached in Kirkham, given the absence of any other appellate decisions, especially one from the Second Department, Appellate Term or Appellate Division, this Court is bound by the decision in Kirkham. (See Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1994]; cf. Duffy v Horton Mem. Hosp., 66 NY2d 473 [1985].) Nevertheless, since there is no Second Department case dealing with this issue, the Court takes this time to write in order to express its views on the subject.
First, although the rule stated in Kohut has been described as “bright line law” (see e.g. People v Bingham, 263 AD2d 611 [3d Dept 1999]), that statement is not entirely true. For *370 example, that rule must yield to clear legislative intent to the contrary, as evidenced by the affirmative defenses contained in Penal Law § 125.25 (1) (a) and (3) and § 160.15 (4), which, it should be noted, are denominated as exceptions, but are not considered to be elements of the crimes that must be pleaded and proven by the People. As far as this case is concerned, a review of the legislative history underlying the inclusion of the labor language into the Penal Law demonstrates that it was not intended to be an element of the crime.
The crime of criminal contempt was originally created by the Legislature with the enactment of the Penal Code in 1881. (See L 1881, chs 676, 680, § 143.) In 1909, the Penal Code was replaced by the Penal Law of 1909 and the crime of criminal contempt was moved, verbatim, to Penal Law of 1909 § 600 (L 1909, ch 88). This section read, in pertinent part, as follows:
“A person who commits a contempt of court, of * * * the following, is guilty of a misdemeanor
“(4) Wilful disobedience to the lawful process or other mandate of a court.”
Subdivision (4) continued to read this way until 1935, when it was amended by the New York Legislature and the exception for labor disputes was inserted therein. This amendment was in conjunction with the passage of the Little NorrisLaGuardia Act (Civ Prac Act § 876-a, L 1935, ch 477, § 1), [1] “named for its Federal prototype,” the Norris-LaGuardia Act, enacted by Congress in 1932 (47 US Stat 70; 29 USC §§ 101-115; see Rankin v Shanker, 23 NY2d 111 [1968]). The Federal and State legislations were aimed at the growing labor unrest existing in this country at that time and were specifically designed to curtail the powers of courts to issue either temporary or permanent injunctions in nonviolent labor disputes, and, thus, to strengthen the powers of unions to organize and bargain collectively. (See Rankin v Shanker, supra; Busch Jewelry Co. v United Retail Empls. Union, 281 NY 150 [1939]; see also Boys Mkts. v Retail Clerks Union, 398 US 235, 250-253 [1970]; Note, International Union, United Mine Workers v Bagwell: A Paradigm Shift in the Distinction Between Civil and Criminal Contempt, 81 Cornell L Rev 181, 191-192 [1995].)
In furtherance of that legislative objective, the New York State Legislature amended Penal Law of 1909 § 600 and added *371 section 753-a to the Judiciary Law in 1935. (See L 1935, ch 299, § 2.) As a result of the 1935 legislation, violations of judicial orders in labor-related cases were no longer punishable as crimes under the Penal Law. Redress for violations could be pursued only under the Judiciary Law, which, it should be noted, does not classify contempt adjudications as crimes. (See Judiciary Law §§ 750, 753; see also Penal Law § 10.00 [6].) In addition to ensuring a person in a labor-related case would not have the stigma of a criminal record, the New York Legislature, following the Federal lead, also gave persons the right to a jury trial for these contempt adjudications, a right not guaranteed in that era by the United States Constitution to persons prosecuted in State courts for any type of offense. (See Duncan v Louisiana, 391 US 145 [1968]; see also Baldwin v New York, 399 US 66 [1970].) Indeed, under the New York State Constitution, a defendant was not necessarily guaranteed the right to a trial by jury when prosecuted for misdemeanors and lesser offenses. (See People v Erickson, 302 NY 461 [1951]; see also Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 340.40, at 119-122 [1994].) A statutory right to a jury trial existed, but only to persons prosecuted outside the City of New York. (See People ex rel. Frank v McCann, 253 NY 221 [1930] [defendant charged with contempt under Penal Law of 1909 § 600 in the Court of Special Sessions in City of New York did not have the right under the State Constitution to be tried by a jury].)
It should be noted that with the passage of the revised Penal Law in 1965, the crime of criminal contempt was carried over, almost verbatim, from the former Penal Law into Penal Law § 215.50. (See L 1965, ch 1030, amended by L 1967, ch 791, § 29.) In 1972, Penal Law § 215.50 was renamed criminal contempt in the second degree, without any substantive changes. (See L 1972, ch 702, § 1.) As it exists today, therefore, Penal Law § 215.50 is virtually a restatement of Penal Law of 1909 § 600. (See Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 215.50, at 739-740 [1967].) Accordingly, what the Legislature intended in 1935 continued into the revised Penal Law.
That intent is readily discernable. The legislative will underlying the 1935 legislation was to give preferential treatment to persons accused of violating court orders in labor-related settings by providing immunity from criminal conviction. By inserting the labor language exception into Penal Law of 1909 § 600, the Legislature was flagging a specific type of *372 case that could no longer be prosecuted under this section. Understood from this perspective, it makes more sense to conclude that the Legislature intended the labor language to operate as a jurisdictional impediment to conviction (see e.g. CPL 170.30 [1] [f]), rather than an element of the crime. Indeed, this interpretation actually advances the will of the Legislature since this issue, rather than being decided by a jury following a prolonged trial, can be expeditiously and more easily resolved by a court as a matter of law in a motion to dismiss.
Second, the decision in Kirkham must be understood in terms of the case law from which the exception rule originated. Specifically, in People v Devinny (227 NY 397, 401 [1919], a case relied upon by the Kohut Court, the Court of Appeals stated that “[t]he general rule is that in dealing with a statutory crime exceptions must be negatived by the prosecution and provisos utilized as a matter of defense.” The Court of Appeals further noted that “[attempts to apply this general rule and distinguish between exceptions and provisos have resulted in many technicalities and in much subtlety. The two classes of provisions — exceptions and provisos — frequently come closely together, and the rule of differentiation ought to be so applied as to comply with requirements of common sense and reasonable pleading.” (People v Devinny, 227 NY at 401.)
The very definition of the labor language exception set forth in the Judiciary Law guides the Court’s commonsense analysis. Based on that definition, it makes much more sense to characterize the labor language exception as a proviso, not an element of the crime. Judiciary Law § 753-a reads as follows:
“1. Notwithstanding any inconsistent provision of law, where the alleged contempt is punishable under section seven hundred fifty and/or section seven hundred fifty-three and arises out of any failure or refusal to obey any mandate of a court contained in or incidental to an injunction order granted by such court in any case involving or growing out of a labor dispute, no punishment, prescribed by either of such sections, shall be meted out except after a trial by jury to which the defendant shall be entitled as a matter of right; provided, however, that this section shall not apply to any alleged contempt of such an injunction order committed in the presence of the court.
“2. As used in this section and in subdivision three of section 215.50 of the penal law:
“(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the *373 same industry, trade, craft or occupation; or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is between one or more employers or associations of employers and one or more employees or associations of employees; between one or more employers or associations of employers and one or more employers or associations of employers; or between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a labor dispute’ (as hereinafter defined) of ‘persons participating or interested’ therein (as hereinafter defined).
“(b) The term labor dispute’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.
“(c) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employers or employees engaged in such industry, trade, craft or occupation.”
As is evidenced by the convoluted language of Judiciary Law § 753-a, a virtual mini-trial could be had on whether a defendant comes within the exception, a result the Legislature could certainly not have desired. (See People v Devinny, supra, 227 NY at 401.) Nor is it a result that comports with common sense. Specifically, in this era of domestic violence, where court calendars are flooded daily with domestic abuse cases, the exception contained in the Penal Law, as defined at length in the Judiciary Law, has almost no relationship to these cases. Surely, the defendant in the ease at bar cannot seriously contend that the Family Court Judge who issued the order of protection did so pursuant to a labor dispute between the defendant and the- mother of his child. Furthermore, although Judiciary Law § 753-a’s definition of “labor dispute” is quite broad and could arguably cover family members working together in a business, it could hardly have been the intent of the Legislature that this section be applied to situations where one family member engages in violence against another family *374 member and court intervention is sought to prevent further abuse. Given that the legislation applies to peaceful labor disputes (see Busch Jewelry Co. v United Retail Empls. Union, supra), not violent ones, the legislative intent is actually to the contrary. (See also Kay-Fries, Inc. v Martino, 73 AD2d 342, 348 [2d Dept 1980].) In sum, it makes absolutely no sense to require the District Attorney to prove the existence of this negative. Accordingly, both the legislative history underlying the statute and simple common sense dictate that the labor law language is not an element of the crime. The issue should be raised by the defendant by a motion to dismiss either prior to trial or at the end of the People’s case. (See People v Devinny, supra.)
The Court is not unmindful that this analysis appears to be at odds with the Court of Appeals decision in People v Rodriguez (68 NY2d 674 [1986], revg for reasons stated in dissenting opn of Lazer, J., 113 AD2d 337, 343-348 [2d Dept 1985]). In Rodriguez, the Court of Appeals concluded that the “home or place of business” exception in criminal possession of a firearm in the third degree (Penal Law § 265.02 [4]), was an element of the crime, to be pleaded and proven by the prosecution, not the defendant. Two factors distinguish the result reached in Rodriguez from the conclusion reached here. As noted, the legislative history of Penal Law § 215.50 demonstrates that the labor exception language was not intended as an element of the crime. Second, unlike the “home or place of business” exception language of Penal Law § 265.02 (4), which is exclusively contained within the Penal Law, the labor exception language of Penal Law § 215.50 (3) is only partially contained therein. The actual definition exists outside the Penal Law. Thus, since this exception is contained outside the Penal Law, the rule in Kohut is arguably inapplicable.
And, although it could be argued that the definition is incorporated by reference into the Penal Law, the Court of Appeals, in an analogous situation, has taken a contrary position. (See People v Thomas, 70 NY2d 823 [1987].) In Thomas, the defendant was charged with Vehicle and Traffic Law § 1192 (2) which prohibits the operation of a motor vehicle when the driver’s blood alcohol content is .10% or more “as shown by chemical analysis of such person’s blood * * * made pursuant to the provisions of section eleven hundred ninety-four of this article” (emphasis added). The provisions of Vehicle and Traffic Law § 1194 provide a very detailed statutory outline of when an arrest and testing for intoxicated driving are permitted. In Thomas, the Court of Appeals essentially concluded that the *375 Vehicle and Traffic Law § 1194 portion of Vehicle and Traffic Law § 1992 (2) is not an element of that crime. (See People v Thomas, supra.) Although the Court in Thomas did not articulate its reasons for its conclusion, what is apparent is that the Court was applying a commonsense approach to statutory interpretation, by concluding that the details of Vehicle and Traffic Law § 1194 are best left for the trial court to decide, not the jury. For all the reasons outlined above and, in light of Thomas, the Court concludes that Rodriguez does not dictate a contrary result.
Nevertheless, this Court is constrained by the decision in Kirkham and must conclude that the labor language is an element of the crime. Viewing the labor language as an element of Penal Law § 215.50, the Court finds that the count of the accusatory instrument charging criminal contempt in the second degree is facially insufficient.
In so finding, the Court begins its analysis with CPL 100.40 (1). This section, in part, provides that:
“[a]n information, or a count thereof, is sufficient on its face when:
“(a) It substantially conforms to the requirements prescribed in section 100.15;[2] and
“(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and
“(c) Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant’s commission thereof.”
Here, the District Attorney failed to comply with the requirement of CPL 100.40 (1) (c) in that the factual part of the information failed to establish every element of the crime of criminal contempt in the second degree and the defendant’s *376 commission thereof. (See People v Casey, 95 NY2d 354.) Although the defendant has been notified that he violated Penal Law § 215.50 (3), the factual portion fails to present a prima facie case that the defendant’s contemptuous conduct is not a case involving or growing out of a labor dispute, as defined by the Judiciary Law. Except for citing the specific statutory provision, the accusatory instrument is devoid of any factual allegations indicating that this case involved or did not involve a labor dispute. Here, the accusatory instrument informs the defendant that a Family Court Judge issued an order for him to refrain from threats of physical violence against the complainant, that the defendant was served with that order in court with the complainant present as a witness, and that the defendant intentionally disobeyed that order by telephoning the complainant and threatening to kill her. Certainly, factual allegations so detailed may allow for the inference of one or all the elements of the crime. (See e.g. People v Combs, 38 NY2d 868 [1976].) Here, however, aside from the fact that it was a Family Court Judge who issued the order of protection, there is no way to know from the face of this complaint whether this case was or was not the result of a labor dispute. Accordingly, the accusatory instrument is defective on its face.
Nevertheless, dismissal of the criminal contempt count is inappropriate at this time. CPL 170.35 (1) (a) provides that an information or a count that is insufficient on its face, “may not be dismissed as defective, but must instead be amended, where the defect or irregularity, is of a kind that may be cured by amendment and where the people move to so amend.” The Court concludes that the defect here is curable. Accordingly, the decision on the defendant’s motion to dismiss the charge of criminal contempt in the second degree is stayed for 15 days. If the District Attorney moves to amend the accusatory within 15 days of receipt of this order or files a superseding information, then the defendant’s application for dismissal is denied. If the District Attorney fails to move to amend or supersede the information within 15 days, then the Court’s decision granting dismissal will become effective at that time.
Finally, the Court finds it necessary to respond to the District Attorney’s answering papers, which inadequately fail to address the merits of the defendant’s motion and, instead, attack it as being an untimely motion to reargue. The District Attorney’s failure to plead even one of the elements of a crime is *377 a nonwaivable jurisdictional defect, which can be raised at any time. (See People v Casey, supra; see also People v Miles, 64 NY2d 731 [1984].)

. Civil Practice Act § 876-a was repealed and replaced by the Legislature in 1962 with Labor Law § 807, (See L 1962, ch 310, § 258.)

. CPL 100.15 sets forth the form and content for informations, misdemeanor complaints and felony complaints. Subdivision (1) mandates that “[e]ach instrument must contain an accusatory part and a factual part.” Subdivision (2) provides that the “accusatory part of each such instrument must designate the offense or offenses charged.” Subdivision (3) requires, in part, that “[t]he factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges.”