Robert McCULLOUGH, Petitioner–
Appellant,

v.

Floyd BENNETT, Respondent–
Appellee.

Docket No. 04–0081–PR.

United States Court of Appeals,
Second Circuit.

Argued: May 17, 2005.

Decided: June 24, 2005.

David Gerald Jay, Buffalo, N.Y., for Petitioner–Appellant.

Loretta S. Courtney, Asst. District Atty., Rochester, N.Y. (Michael C. Green, Monroe County District Atty., Rochester, N.Y., on the brief), for Respondent–Appellee.

Before: MESKILL, NEWMAN, and CABRANES, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal from the denial of a writ of habeas corpus presents the issue of whether convictions and consecutive sentences on two counts of criminal possession of a weapon violate petitioner's double jeopardy rights when the two counts reflected shootings at two victims getting out of the same vehicle in rapid succession. Petitioner-appellant Robert McCullough appeals from the November 10, 2003, judgment of the District Court for the Western District of New York (William M. Skretny, District Judge) denying his petition for a writ of habeas corpus. We conclude that the evidence permitted the jury to find the commission of two distinct offenses in accordance with applicable state law. We therefore reject the double jeopardy challenge and affirm.

## Background

The state court jury was entitled to find the following facts. In August 1997, McCullough approached a parked Cadillac in Rochester, New York, with a gun in his hand. As he tried to open the front passenger door, Jagdeep Drumgoole ran out of the driver's side of the car. McCullough fired at Drumgoole as he ran away. McCullough then opened the front passenger door, threatened one of the remaining occupants, Corey Minter, with the gun,

pulled Minter out of the car, and shot in his direction.[1]

McCullough was charged with three counts of Attempted Aggravated Assault on a Police Officer, five counts of Criminal Possession of a Weapon in the Second Degree, in violation of N.Y. Penal Law (former) § 265.03, and one count of Criminal Possession of a Weapon in the Third Degree, in violation of N.Y. Penal Law § 265.02[4]. Among the five Second Degree weapons charges were one for using the weapon against Drumgoole and one for using it against Minter.

The jury found McCullough guilty of the two Second Degree weapons counts involving Drumgoole and Minter, and the Third Degree weapons count. The trial judge sentenced McCullough to three and one half to seven years on the Third Degree count, and two consecutive sentences of seven and one half to fifteen years on the two Second Degree weapons counts. The Appellate Division affirmed, *People v. McCullough*, 283 A.D.2d 988, 724 N.Y.S.2d 666 (4th Dep't 2001), and leave to appeal was denied, *People v. McCullough*, 96 N.Y.2d 941, 733 N.Y.S.2d 381, 759 N.E.2d 380 (2001)(table).

In a habeas corpus petition, McCullough challenged the imposition of consecutive sentences on the two counts of Criminal Possession of a Weapon in the Second Degree. After Judge Skretny denied the petition, this Court granted a certificate of appealability on the issues of whether the convictions and consecutive sentences violated McCullough's Double Jeopardy rights.

### Discussion

The Double Jeopardy Clause protects, among other things, against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). When two acts violate the same statute, as in the pending case, the Supreme Court has distinguished between a statute that punishes a continuous offense and one that punishes distinct acts. *See Blockburger v. United States*, 284 U.S. 299, 303, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (two drug sales to the same person on different days punishable as separate offenses). The Court looked to see if lawmakers had intended to criminalize each act. " 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. ... If the latter, there can be but one penalty.' " *Id.* at 302, 52 S.Ct. 180 (quoting Wharton's Criminal Law § 34 n. 3 (11th ed.1912)). "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *Compare Mansfield v. Champion*, 992 F.2d 1098 (10th Cir.1993) (one offense for robbing one victim of money belonging to victim and money belonging to a store) *with United States v. Farmigoni*, 934 F.2d 63 (5th Cir.1991) (two offenses for using fraudulent letter of credit to defraud two banks).

In this case, the relevant state statute defines the offense of Criminal Possession of a Weapon in the Second Degree as follows:

A person is guilty of criminal possession of a weapon in the second degree when, *with intent to use the same unlawfully against another:*

---

**1.** The state trial court noted, on some undisclosed basis, that McCullough shot Minter in the heel, adding that there was no evidence of such wounding.

. . .

(2) He possesses a loaded firearm;

. . . .

New York Penal Law § 265.03 (McKinney 2000) (emphasis added).

New York case law has not been entirely consistent on the issue of whether second degree weapons possession is a multiple or single crime, but there is sufficient clarity for decision of the pending appeal.[2] In *People v. Murphy,* 115 A.D.2d 249, 496 N.Y.S.2d 168 (4th Dep't 1985), the Fourth Department of the Appellate Division concluded that consecutive sentences for second degree weapons possession could not be imposed for use of a gun to kill one person and then threaten another person. "Since at no time during the attempted robbery did the gun leave defendant's hand, defendant's possession of the gun was a single and continuous act motivated by a continuing intent to commit larceny." *Id.* at 249, 496 N.Y.S.2d 168. However, the Second Department of the Appellate Division has specifically rejected the reasoning of *Murphy:*

> Although we recognize that the Appellate Division, Fourth Department, will look to the motivating factor behind offenses to determine whether disparate acts are involved (*People v. Kelley,* 25 A.D.2d 715, 270 N.Y.S.2d 127; *see also, People v. Murphy,* 115 A.D.2d 249, 496 N.Y.S.2d 168, *lv. denied* 67 N.Y.2d 887, 501 N.Y.S.2d 1039, 492 N.E.2d 1246), we decline to adopt this view. Rather, the test is whether separate acts were committed with the requisite criminal intent in determining whether consecutive sentences are appropriate (*see, People v. Baker,* 27 A.D.2d 269, 272, 278 N.Y.S.2d

309, *aff'd* 19 N.Y.2d 982, 281 N.Y.S.2d 527, 228 N.E.2d 695).

*People v. Scandell,* 143 A.D.2d 423, 424, 532 N.Y.S.2d 424, 425 (2d Dep't 1988).

Two decisions of the New York Court of Appeals are relevant. In *People v. Okafore,* 72 N.Y.2d 81, 531 N.Y.S.2d 762, 527 N.E.2d 245 (1988), the Court of Appeals specifically considered the issue of multiple weapons possession offenses with respect to a defendant who possessed a weapon and, within one hour, shot one person and intended to shoot others. In *Okafore,* a husband suspected his estranged wife of having an affair with his son. He shot his estranged wife and fled when police arrived. He then headed for his son's apartment to kill him, but abandoned that plan and returned home, intending to kill himself. Arriving home, he found police officers, pointed the gun at one of them, but was shot by them before he could fire his weapon. He was convicted in the Bronx of manslaughter and second degree weapons possession for use of the gun against his wife, and then convicted in Manhattan of second degree weapons possession based on his threatened use of the gun against the police officers. *See id.* at 83–84, 531 N.Y.S.2d at 763, 527 N.E.2d 245.

The Court considered whether possession of the weapon with intent to kill the police officers was separately punishable from possession with intent to kill the wife. The Court noted that, unlike third degree weapons possession, second degree weapons possession could involve either continuous or discrete crimes. "[S]econd degree spans only the period during which defendant possesses the weapon and harbors the unlawful intent to use it against another. If either element lapses, the crime is

---

2. The New York Court of Appeals has determined that third degree weapons possession is a continuous crime and that double jeopardy protections attach if it is prosecuted twice during any one possession because that statute does not involve "temporal units." *Johnson v. Morgenthau,* 69 N.Y.2d 148, 512 N.Y.S.2d 797, 505 N.E.2d 240 (1987).

complete." *Okafore,* 72 N.Y.2d at 87, 531 N.Y.S.2d at 765, 527 N.E.2d 245. The Court then ruled that possession with intent to shoot the wife and possession with intent to shoot the police officers were separate crimes because the continuity of Okafore's intent with respect to his wife was broken by the decision to kill himself. "This new intention provided a break in the continuing nature of the crime, even if the other change [deciding to kill his son] did not, because the intent to commit suicide cannot support a prosecution for second degree criminal possession of a weapon...." *Id.* at 88, 531 N.Y.S.2d at 765, 527 N.E.2d 245. The Court of Appeals concluded, "Inasmuch as two criminal intents are discernible, constituting discrete culpable events and not a single continuing one, each could be separately prosecuted." *Id.* at 89, 531 N.Y.S.2d at 767, 527 N.E.2d 245. Amplifying its rationale, the Court added:

> If defendant's intent is directed to one or more of a group of people, it indeed may be that only one offense is committed. But if the original unlawful intent is abandoned and subsequently a new intent is formed to use the weapon against others during the period of possession, more than one crime is committed.

*Id.* at 89–90, 531 N.Y.S.2d at 767, 527 N.E.2d 245.

In *People v. Brown,* 80 N.Y.2d 361, 590 N.Y.S.2d 422, 604 N.E.2d 1353 (1992), a case not involving weapon possession offenses, the Court stated generally that consecutive sentences may be imposed even though "separate acts" are "part of a single transaction," *id.* at 364, 590 N.Y.S.2d at 424, 604 N.E.2d 1353, and that separate offenses "spring from distinct acts ... *distinguishable by culpable mental state,* nature and manner of use, time, place and victim," *id.* at 365, 590 N.Y.S.2d at 424, 604 N.E.2d 1353 (emphasis added).[3]

*Okafore* and *Brown* provide each side in the pending appeal with helpful language. *Okafore*'s statement that an intent "directed to one or more of a group of people," "may" indicate only one offense lends some support to McCullough. During his possession of a weapon, he intended to shoot both Drumgoole and Minter, who could be viewed as members of a "group" of occupants of the car. Moreover, between the shooting at Drumgoole and the shooting at Minter, there is no evidence of an intent-interrupting occurrence comparable to Okafore's decision to return home to kill himself. In addition, to the extent that the Court intimated that Okafore's abandoned intent to shoot his son might have been a continuation of the intent to shoot his wife, *Okafore* would equally suggest a continuing intent on McCullough's part to shoot both Drumgoole and Minter.[4]

On the other hand, *Okafore*'s statement that separate offenses occur "if the original unlawful intent is abandoned and subsequently a new intent is formed to use the weapon against others" lends some support to the State. During his possession of a weapon, McCullough arguably abandoned his intent to shoot Drumgoole once he had completed firing at him and then

**3.** The pertinence of these statements to weapons possession offenses is put in issue by the Court's further statement that "[i]t is appropriate and useful to distinguish our precedents dealing with weapons possession and interrelated, ensuing substantive crimes." *Brown,* 80 N.Y.2d at 364, 590 N.Y.S.2d at 424, 604 N.E.2d 1353. It seems likely, however, that this caution was directed to the issue of whether weapons possession offenses merged with a related substantive crime, not whether two weapons possession offenses could occur within a single transaction.

**4.** In *Okafore,* the State did not charge the defendant with a separate count of weapons possession with intent to shoot his son.

formed a new intent to drag Minter out of the car and shoot this second occupant of the car.

 What we distill from all of the pertinent language in *Okafore,* as well as that in *Brown,* is that the New York Court of Appeals is making the decision of one or more weapons possession offenses turn on a factual determination as to the defendant's intent. Did the defendant have one continuous intent to harm one or more people or an intent to harm one person that ended followed by a new intent to harm another person? This view of the determinative inquiry finds support in the Court's statement in *Brown* that separate offenses "spring from distinct acts ... distinguishable by culpable mental state." For example, intending to fire a weapon in the general direction of a group of people would constitute one offense. However, where, as here, the defendant shoots at one person and then, even moments later, shoots at another person, it is a factual issue whether he had one continuous intent to shoot at both of them or formed an intent to shoot the second person after his intent with respect to the first person ended.

In the pending case, the issue of intent was put to the jury, and the jury found that McCullough had the requisite intent to commit two weapons possession offenses. Although the jury charge might have more precisely alerted the jury to the distinction at issue, no additional language on this point was offered. Thus, we can see no basis for disagreeing with the view of the state courts in this case. A finding of intent is generally within the unique province of the fact-finder. "Findings which relate to such intangibles as motivation and intent depend especially upon the credibility assessments made by those who see and hear the witnesses," *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir.

1976), and the fact-findings of the trial court are "presumed to be correct." 28 U.S.C. § 2254(e)(1); *see Cotto v. Herbert,* 331 F.3d 217, 233 (2d Cir.2003). Based on the jury's verdict, the state trial court ruled that the two shootings were each a "separate and distinct act," one against Drumgoole and one against Minter. The Appellate Division affirmed, finding the offenses " 'distinguishable by culpable mental state, nature and manner of use, time, place and victim.' " *McCullough,* 283 A.D.2d at 988, 724 N.Y.S.2d at 667 (quoting *Brown,* 80 N.Y.2d at 365, 590 N.Y.S.2d at 424, 604 N.E.2d 1353). With a permissible factual basis to find the two intents that state law requires for two weapons possession offenses, there is no basis for a federal court to grant habeas corpus relief on double jeopardy grounds.

### Conclusion

The judgment of the District Court is affirmed.