OPINION OF THE COURT
Nicholas L. Pitaro, J.
As the plastic card gradually replaces currency as the medium of exchange in the economy, the banks, and ultimately the consumer, are increasingly bearing the burden of absorbing the costs of credit card fraud. This case arose in the context of an undercover operation set up by various banks, the Queens District Attorney’s office and the New York City Police Department. The purpose of the operation was to determine if store personnel would accept a credit card in payment for goods knowing that the presenter of the card was not the actual cardholder and to eventually apprehend the transgressors.
After a jury trial, the defendant, a sales clerk in a retail establishment, was found guilty of the crime of forgery in the second degree on September 1, 1983. The defendant now moves for an order pursuant to CPL 330.30 setting aside such guilty verdict as to the second count of the indictment. The defendant’s contentions are that (a) the conduct of the defendant as proved does not fall within the *7 purview of the statute of forgery in the second degree (Penal Law, § 170.10); and that (b) there is no violation of the statute where, as in the instant case, the instrument is a valid instrument made by an authorized agent.
In this case, the defendant sold goods on two occasions to a confidential informant, a bulky black male, whose true name was Robert Turnipseed. Mr. Turnipseed was authorized by the banks to present credit cards under various names to store personnel in retail establishments.
The transactions in question took place on April 27, 1982, and May 3, 1982. Each transaction involved the use of credit cards. A credit card bearing the name of Vito Di Giovanni was presented by the confidential informant to the defendant during the first transaction, on April 27, 1982, to purchase goods. In the second transaction between the same parties, on May 3,1982, a credit card bearing the name of Bendar Wu was presented by the confidential informant to the defendant to purchase additional goods, after the confidential informant had exhibited a total of three different credit cards to the defendant. The conversations between the confidential informant and the defendant were taped. As to the second transaction, which supplies the basis for defendant’s conviction of the crime of forgery in the second degree, it is clear from the evidence presented that the defendant definitely knew that the person presenting the card was not the cardholder, Bendar Wu. In fact, at the time of the first transaction approximately one week before, the same person had presented a credit card in the name of Vito Di Giovanni to the defendant. When this same male black confidential informant entered the store at the time of the second transaction, the defendant called out to him, “Hey * * * ah * * * Vito.” The confidential informant said to the defendant “Yeah but listen * * * uh * * * I got a different card with me today.” The defendant asked, “Which card? What you got?” As the defendant examined three different credit cards with different cardholder names on them presented by the confidential informant, he asked the confidential informant, “These your own? Where you get these cards at?” The response he received was, “Ah, man, you know where I be gettin’ them at.” When the defendant asked for an address *8 in this second transaction, he was told by the confidential informant that it was “Ah * * * 97-07” at which point the defendant, having been supplied with the same address used by the confidential informant in the first transaction, stated, “No, give me a different address.” The confidential informant stated to the defendant, “I generally don’t like to do this twice in a row, man, you know, I don’t want to jam you up, you know what I mean.” The defendant responded, “That’s right. That’s why the other address you gave me, there was no address like that, but * * * ah”. It is therefore clear that, in addition to accepting a credit card from someone whom he knew was not Bendar Wu (whose name was on the card) the defendant solicited patently false information regarding the confidential informant’s address. The defendant thus had the “intent to defraud, deceive or injure another” as required by section 170.10 of the Penal Law.
It is noted, in support of defendant’s motion herein, that as to both transactions, the defendant received authorization from the bank prior to completing each transaction. Such authorization only indicated that the credit cards were valid cards and that approval was given as to the amount of the purchase price in each transaction. Clearly, such approval alone, via the telephone, did not authorize the defendant to accept the credit card from someone other than the named cardholder.
The defendant further argues that in this case the presenter of the credit card was in fact authorized to use the credit card, making it legally impossible for the defendant to have committed the crime of forgery in the second degree. It is this question of legal impossibility, the principal issue in this case, that this court must resolve in determining this motion to set aside the verdict and in considering what action, if any, this court should take.
The court charged the jury as to the crime of forgery in the second degree in the language of “falsely complete.” Section 170.10 of the Penal Law, insofar as it is applicable to this case, reads as follows:
“A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely *9 * * * completes * * * a written instrument which is * * * if completed:
«1 ^ * * * commercial instrument, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status”.
As noted previously, the defendant clearly had the “intent to defraud, deceive or injure another”. Furthermore, a credit card slip, for purposes of section 170.00 et seq. of the Penal Law, is a written instrument of a nature to “ ‘evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status’ ”. (People v Le Grand, 81 AD2d 945, 946.)
Thus, it remains to be considered whether the defendant falsely completed the credit card slip. (While the defendant emphasizes subdivision 4 of section 170.00 of the Penal Law as to “falsely make”, defendant’s argument of legal impossibility equally applies to the language of “falsely complete” which the court utilized to charge the jury.) Subdivision 5 of section 170.00 of the Penal Law defines “falsely complete” as follows: “A person ‘falsely completes’ a written instrument when, by adding, inserting or changing matter, he transforms an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that such complete instrument appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer.” (Emphasis added.)
In this case, it is abundantly clear that the defendant knew that as to the second transaction which is the basis of the conviction herein, the confidential informant presenting the credit card was not indeed the ostensible maker or drawer, to wit: Bendar Wu. This is not a similar situation to that involved in the case of People v Levitan (49 NY2d 87) where the defendant was both the actual and ostensible drawer of the instruments in question.
However, it is apparent that the name Bendar Wu, be it a real or fictitious name, was utilized by the bank herein as part of the undercover operation. It is also clear that the bank authorized the confidential informant herein to use the credit card in this undercover operation. As the confi *10 dential informant was authorized to use the credit card, it cannot logically be argued that in reality, the defendant “falsely completed” a written instrument by transforming “an incomplete * * * instrument into a complete one, without the authority of anyone entitled to grant it” as required by subdivision 5 of section 170.00 of the Penal Law. To argue that the confidential informant was in fact authorized by the bank to use the card but that in so using the card he did not, as a matter of law, grant authority to the defendant to complete the credit card slip, the written instrument herein, is a non sequitur and a contortion of logic that this court will not adopt. Upon reflection by this court, it is concluded that it was legally impossible for the defendant to have committed the crime of forgery in the second degree in view of the fact that the confidential informant was in fact, authorized to use the credit card in question.
However, such “legal impossibility” does not preclude conviction of the defendant of the lesser included offense of attempt to commit the crime of forgery in the second degree. Section 110.00 of the Penal Law states that: “A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.”
Section 110.10 of the Penal Law states that: “If the conduct in which a person engages otherwise constitutes an attempt to commit a crime pursuant to section 110.00, it is no defense to a prosecution for such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be.”
In the case of People v Dlugash (41 NY2d 725) it is stated that: “At the root of the concept of attempt liability are the very aims and purposes of [the] penal law. The ultimate issue is whether an individual’s intentions and actions, though failing to achieve a manifest and malevolent criminal purpose, constitute a danger to organized society of sufficient magnitude to warrant the imposition of criminal sanctions * * * the concern centers on whether an indi vid *11 ual should be liable for an attempt to commit a crime when, unknown to him, it was impossible to successfully complete the crime attempted.” (41 NY2d, at p 726.)
As noted in the Practice Commentaries by Arnold D. Hechtman (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 110.10, p 320) in discussing this subject, “impossibility” is said to be of two kinds: factual and legal. The classic example of factual impossibility is posed by an attempt to pick a pocket which is empty, such conduct being held in New York to constitute attempted larceny (People v Moran, 123 NY 254), while as an example of legal impossibility, it has been held that a person who received goods which he believed to be stolen but which were not in fact stolen, was not guilty of an attempt to receive stolen goods. (People v Jaffe, 185 NY 497.) As the Practice Commentaries (op. cit., p 320) note: “While the distinction between factual and legal impossibility is not always clear-cut, the case law of New York appears to have been that factual impossibility did not constitute a defense to a prosecution for attempt, but that legal impossibility did (People v. Hollino, 1962, 37 Misc 2d 14 * * *).”
If such was the law, this section changes it by equally rejecting both brands of impossibility as a defense upon the theory that neither detracts from the offender’s culpability.
As applied to the facts of this case, the evidence clearly shows that the defendant knew that he was accepting a credit card from someone other than Bendar Wu and that the defendant believed that this person who presented the credit card was not authorized to use it. Thus, when one focuses on the defendant’s intentions and actions, it is unquestionably clear, that despite legal impossibility as to the crime of forgery in the second degree, the evidence proves that the defendant is guilty of the crime of attempted forgery in the second degree in that as far as the attendant circumstances as the defendant believed them to be, he had transformed an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it.
In determining what course of action this court should accordingly take, it should be noted that the court was not requested by either side, to charge the lesser included *12 offense of attempted forgery in the second degree. Notwithstanding the lack of such a request, CPL 330.30 provides as follows:
“At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:
“1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.”
CPL 470.15 (subd 2, par [a]) states that upon appeal, an intermediate appellate court may modify a judgment in the following way: “Upon a determination that the trial evidence adduced in support of a verdict is not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted but is legally sufficient to establish his guilt of a lesser included offense, the court may modify the judgment by changing it to one of conviction [of] the lesser offense”.
An attempt to commit a crime constitutes a lesser included offense with respect to that particular crime (CPL 1.20, subd 37). The evidence in this case is legally sufficient to establish defendant’s guilt of the lesser included offense of attempted forgery in the second degree.
The defendant’s motion to set aside the verdict and for such other and further just and proper relief is decided as follows:
This court hereby modifies the jury’s verdict finding the defendant guilty of the crime of forgery in the second degree, to a verdict finding the defendant guilty of the crime of attempted forgery in the second degree. (See People v Dlugash, 41 NY2d 725, 738, supra, where modification was ordered.) Except for the modification ordered hereinabove, the defendant’s motion to set aside the verdict and for any other relief is denied.