■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISMAEL IGARTUA, Appellant.—Judgment, Supreme Court, New York County (Daniel FitzGerald, J.), rendered June 24, 1988, convicting defendant after a jury trial of four counts of attempted assault in the second degree, burglary in the first degree, assault in the second degree, and two counts of criminal possession of a weapon in the second degree, for which defendant was sentenced as a second violent felony offender to consecutive terms of 2 to 4 years on each attempted assault count, 12½ to 25 years on the burglary count, to run consecutive to the attempted assault counts; 3½ to 7 years on the assault count, to run concurrently with one of the attempted assault counts and consecutively to all of the other attempted assault counts; and two terms of 7½ to 15 years on the

weapons counts, to run concurrently with the burglary count and consecutively to the remaining counts, unanimously affirmed.

This prosecution arises out of a thirty (30) hour siege, which began when defendant, heavily armed, pushed his way into an apartment. During the siege, defendant threatened to kill several of the occupants of the apartment as well as police officers outside. Defendant did ultimately shoot one police officer in the arm.

The evidence established that defendant took possession of cash and jewelry while in the apartment. Defendant, testifying in his own behalf, contended that the entire affair was a "mistake", that one of the victims was a "large-scale" drug dealer who owed him money, and had attempted to have him killed, and that defendant came to the apartment only to "straighten out" the matter. When police arrived moments later, events "got out of hand". Defendant contended that he was very "high" by this point, but never intended to hurt anyone.

With respect to defendant's challenge to the court's initial denial of his application to discharge a sworn juror, we note that the court permitted defendant to renew his application later in the trial, but defendant instead withdrew his application. As such, defendant has waived the claim for review (CPL 470.05 [2]). In any event, the court held a full *voir dire,* and we would hold, based on the record, that nothing warrants the conclusion that the juror's prior acquaintance with one of numerous police witnesses, rendered the jury grossly unqualified *(see,* CPL 270.35; *People v Anderson,* 70 NY2d 729, 730; *People v McIntyre,* 121 AD2d 565; *People v O'Connor,* 106 AD2d 900).

Since the convictions for attempted assault in the second degree were predicated on a different theory of law than the conviction for assault in the second degree, these counts do not merge into a single conviction. The weapons possession counts and assault counts arise from separate acts, for which consecutive sentences may be imposed *(see, People v Day,* 73 NY2d 208). The unlawful possession of a weapon completes the possessory crime, and any unlawful use of that weapon may be punished as a separate crime *(see, People v Almodovar,* 62 NY2d 126, 130). Defendant's discharge of his firearms in the direction of the police provides ample evidence of the criminal intent specified in Penal Law § 265.03; a conviction under this section has been sustained even when the weapon

misfires *(see, People v Cavines,* 70 NY2d 882). Since defendant possessed several weapons, it also was not illegal to impose consecutive sentences arising out of possession of each weapon. Finally, we cannot conclude as a matter of law that the sentencing court abused its discretion with respect to the terms imposed. Concur—Milonas, J. P., Ellerin, Wallach, Kassal and Smith, JJ.