OPINION OF THE COURT
Michael R. Juviler, J.
This case raises unresolved questions that are central to the enforcement and application of a recent statute, article 178 of the Penal Law (L 1995, ch 81, § 94, eff Nov. 1, 1995). Article 178 deals with the unauthorized sale or purchase of prescription medications and prescriptions.
The indictment contains one count, which charges the defendant with criminal diversion of prescription medications and prescriptions in the third degree (Penal Law § 178.15), a class E felony. The charge alleges that the defendant knowingly bought three prescription medications whose value was more *253 than $1,000 from a person not authorized to sell them. He moves for an inspection of the Grand Jury minutes (CPL 210.30) and for dismissal or reduction of the charge (CPL 210.20 [1], [1-a]).
The questions raised are: (1) Does the element relating to value, which aggravates the misdemeanor to a felony, refer to the value of the medications, or to the value of the benefit exchanged for the medications? (2) Was the crime charged impossible, because the seller was an undercover investigator? (3) Does each medication require a separate count, or was it proper to join the three medications in one count?
THE CHARGE AND THE APPLICABLE STATUTE
The indictment contains one count, which alleges that “on or about and between November 1 and November 30, 1997, in the County of Kings * * * the defendant * * * knowingly received, in exchange for U.S. currency, from person(s) known to the Grand Jury * * * 300 tablets Procardia XL 60 mg.; 200 Procardia XL 90 mg.; 30 tablets Diflucan 200 mg.; with knowledge and reasonable grounds to know that the seller or transferor was not authorized by law to sell or transfer such prescription medications. The value of the prescription medications received was over one thousand dollars.”
Every offense under article 178 of the Penal Law includes a “criminal diversion act”, a term defined in Penal Law § 178.00 (3). The full text of this definition follows; the defendant is charged under paragraph (b):
“ ‘Criminal diversion act’ means an act or acts in which a person knowingly:
“(a) transfers or delivers, in exchange for anything of pecuniary value, a prescription medication or device with knowledge or reasonable grounds to know that the recipient has no medical need for it; or
“(b) receives, in exchange for anything of pecuniary value, a prescription medication or device with knowledge or reasonable grounds to know that the seller or transferor is not authorized by law to sell or transfer such prescription medication or device; or
“(c) transfers or delivers a prescription in exchange for anything of pecuniary value; or
“(d) receives a prescription in exchange for anything of pecuniary value.”
Penal Law § 178.10 provides that a person is guilty of criminal diversion of prescription medicines and prescriptions in the *254 fourth degree when he or she “commits a criminal diversion act.” This offense is a class A misdemeanor. The offense is raised to a class E felony, the crime charged in this case, when the offender “commits a criminal diversion act, and the value of the benefit exchanged is in excess of one thousand dollars” (Penal Law § 178.15 [1]). Higher degrees of felonies occur when the value of the benefit exchanged is greater.
“[T]he primary force behind [article 178 of the Penal Law] appears to have been the desire to create penalties for, and to make more effective the prosecution of, those involved in the thriving but illicit business of trading in Medicaid prescriptions and medications for reasons of monetary profit, not health” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 178, at 113).
Béfore article 178 was added to the Penal Law, unauthorized trafficking in prescriptions and prescription medications was a misdemeanor covered only by the Education Law (Education Law § 6808 [1]; §§ 6810, 6811 [12]). Article 178 of the Penal Law was enacted as part of chapter 81 of the Laws of 1995, a comprehensive measure designed to reform Medicaid and welfare by increasing efficiency and reducing fraud (Governor’s Mem approving L 1995, ch 81, 1995 McKinney’s Session Laws of NY, at 2296-2302). The new Penal Law provisions of article 178 are broader than the Education Law sections. In addition, unlike the Education Law, article 178 contains felony sections, whose purpose is to “assist prosecutors in tracking down and convicting persons who are illegally selling prescription drugs” (Governor’s Mem, op. cit., at 2300). Chapter 81 also added to “the number of auditors and investigators to monitor the transactions of health care providers” (ibid.).
THE EVIDENCE
The evidence before the Grand Jury shows that on November 7, 1997, an undercover investigator working for the Medicaid Fraud Control Unit of the New York State Attorney-General’s Office went to a video store with 200 90-mg tablets of a prescription medication known as Procardia XL, and 30 200-mg tablets of a prescription medication called Diflucan. These drugs had been provided by the manufacturers in sealed containers, and a special investigator in the Medicaid Fraud Control Unit had put the pills in plastic vials and had given them to the undercover agent to sell at the video store.
The undercover investigator spoke briefly with the defendant, who was operating the store. Although the defendant *255 initially said that he was not interested in buying anything because he had no money, the undercover agent handed the defendant a bag containing the 230 tablets. After further conversation, the defendant took the bag to the rear of the store. Presently, he returned without the tablets and handed the undercover agent $115 in cash.
Six days later, on November 13, 1997, the undercover investigator returned to the video store with 300 60-mg tablets of Procardia XL and gave them to the defendant, who bought them for $120 in cash.
A senior special auditor investigator for Medicaid fraud employed by the Attorney-General’s Office testified that according to the schedule of Medicaid-reimbursement prices for the tablets involved in this case the total value of all the tablets sold to the defendant was $1,389.19, which included $775.67 on November 7 ($471.92 for 200 tablets of Procardia XL 90-mg and $303.75 for 30 tablets of Diflucan 200-mg) and $613.52 on November 13 for 300 tablets of Procardia XL 60-mg.
THE ISSUES PRESENTED AND CONCLUSIONS OF LAW
I
One issue presented is whether the “value of the benefit exchanged” during the alleged transaction (Penal Law § 178.15 [1]) was in excess of $1,000, as the count alleges. If not, the offense is a class A misdemeanor (Penal Law § 178.10), not a class E felony.
The Attorney-General contends that the phrase “the value of the benefit exchanged” refers not to the price that the buyer pays for a medication in an illegal transaction, but to the fair value of the medication in the lawful retail market, in this case $1,389.19 for the amounts of the three medications involved. Although the statute is not entirely free from ambiguity (see, Donnino, op. cit.; cf., People v Fournier, Sup Ct, Bronx County, indictment No. 2698/97 [quoted in Attorney-General’s affirmation in opposition]), it is clear enough: “the value of the benefit exchanged” refers not to the value of the medication in the lawful retail market, but to the value of the thing — the benefit — that is exchanged for the medication in the criminal transaction.
This construction of the statute is clear when separate sections of article 178 are read as a whole. A person is guilty of the class A misdemeanor called criminal diversion of prescription medications and prescriptions in the fourth degree if he or *256 she “commits a criminal diversion act” (Penal Law § 178.10). A criminal diversion act includes “an act or acts in which a person knowingly * * * receives, in exchange for anything of pecuniary value, a prescription medication” (Penal Law § 178.00 [3] [b]) from a seller who is not authorized by law to sell it. It is obvious that the phrase “in exchange for anything of pecuniary value” refers to the thing that is exchanged for the prescription medication. The aggravating factor, which increases the offense to a class E felony, exists when the “value of the benefit exchanged” exceeds $1,000 (Penal Law § 178.15 [1]). Plainly, this phrase, “value of the benefit exchanged” (Penal Law § 178.15 [1]), in the felony section refers to the matching phrase, “in exchange for anything of pecuniary value”, in the definition of the criminal diversion act (Penal Law § 178.00 [3] [b]).
Had the Legislature intended that the pecuniary value that aggravates a misdemeanor to a felony be the pecuniary value of the medication, rather than the pecuniary value of the item given in exchange for the medication, it could easily have said so, simply by stating “the pecuniary value of the prescription medication”. Instead, the statute plainly speaks of the pecuniary value of the benefit exchanged for the medication.
Moreover, if the relevant pecuniary value were the value of the medication in the lawful market, rather than the money actually paid for the medication in the transaction at hand, the same treatment would apply to a purchase of a prescription, because with respect to the element of value the purchase of a prescription and the purchase of a prescription medication are treated identically in article 178. Valuation of the prescription on the basis of the lawful market for prescriptions cannot have been the legislative intent, since there is no lawful market for prescriptions (see, Penal Law § 178.00 [3] [c], [d]).
It would have been reasonable to draft the statute so that the seriousness of a crime of unauthorized buying or selling of a prescription medication (as opposed to a prescription) depended on the value of the medication in the lawful market, not the price actually paid in the transaction that is alleged in the count. Determining the aggravating element of value by the price actually paid in the transaction has the advantage of predictability, but it may be somewhat arbitrary in a number of cases, as the aggravating element may depend on the bargaining ability of the individual buyer or seller, not on the ultimate harm to society. In the statute envisioned by the People, the element of value would be based on the objective *257 worth that the same quantity of the transferred medication would have in a market of lawful consumers. In the case at bar, the defendant paid only one sixth of the Medicaid-reimbursement rate for the pills. Presumably, medications that are bought this way in the underground market often are sold at a price well below wholesale to unethical pharmacists, who subsequently obtain reimbursement from Medicaid or insurance companies at a much higher price. Thus, as the Attorney-General correctly notes, basing the aggravating element of value on the value of the medication in the lawful market would be consistent with the economics of the illicit trade and would proportion the seriousness of the offense to the gravity of the harm done.
A court may not, however, redraft legislation to conform to its own view of good public policy. The statute at bar is drafted with sufficient clarity that the court is bound by its “ ‘plain, natural meaning’ ” (see, People v Miller, 70 NY2d 903, 906). To construe it otherwise would be to raise a serious constitutional question of fair notice, which the court is bound to avoid (supra; see also, People v Tomassetti, 159 Misc 2d 969, 971). Therefore, the aggravating element of value is based on the value of the benefit that is exchanged for the medication.
In this case, the benefit exchanged for the medications was United States currency, whose “pecuniary value” (see, Penal Law § 178.00 [3] [b]) is self-evident. Even if, contrary to law (see, part III, below), the court were to combine the money that the defendant gave to the undercover seller on the two dates for the three medications, that total amount, $235, is short of the amount in excess of $1,000 required for a felony. Accordingly, the charge must be reduced to criminal diversion of prescription medications and prescriptions in the fourth degree (Penal Law § 178.10), since the latter crime does not require proof of any minimum value of the benefit exchanged for the drugs.
II
The charge must be reduced further, from the completed crime of criminal diversion of prescription medications and prescriptions in the fourth degree to an attempt to commit that crime.
One of the elements of the completed crime is that the offender receive the prescription medication from a person who “is not authorized by law” to sell it (Penal Law § 178.00 [3] [b]). The Attorney-General takes the position that “when an *258 undercover agent sells prescription medications, his conduct is not authorized by law” (affirmation in opposition to motion to dismiss, at 5). This is incorrect.
The Attorney-General’s undercover agent who sold the medications to the defendant was authorized by law to sell them. The agent carried out those sales as part of his lawful duties as a public officer enforcing the Penal Law, by “specific assignment” of the Attorney-General’s designated officials, and pursuant to the agent’s “implicit powers” (see, People v Zodda, 153 Misc 2d 94, 95, 96-97 [sale of a gun to an undercover police officer was not a completed crime of criminal sale of a firearm in the second degree, which requires a sale to a person “ ‘not authorized pursuant to law to possess a firearm’ ”, but was an attempt to commit that crime, because the buyer was authorized to possess the gun (1) by his implicit powers as an undercover officer, and (2) by statute, Penal Law § 265.20]; People v Babits, 122 Misc 2d 6, affd 116 AD2d 1047 [the defendant, who sold goods to a confidential informant despite the defendant’s knowledge that the buyer was using credit cards with fictitious names, could not be convicted of forgery, because the informant was authorized to use the credit cards as part of the undercover operation, and therefore the informant did not act “without the authority of anyone entitled to grant it” as required by Penal Law § 170.00 (5) for a forgery; but the defendant could be convicted of attempted forgery]). For the same reasons, undercover narcotics police officers who buy or transfer controlled substances in their official capacity of enforcing Penal Law article 220 are not guilty of criminal possession or sale of a controlled substance.
Although there is no specific statutory authorization for undercover investigators to sell or receive prescription medications, as there is for undercover investigators to sell or receive controlled substances (see, Public Health Law § 3305 [1] [a], [b]), no such statute is necessary. Authorization is implicit in the functions of undercover investigators (People v Zodda, supra).
Moreover, contrary to the Attorney-General’s argument, there is statutory authorization, albeit not specific to enforcers of Penal Law article 178, for the kind of operation that was conducted in this case. Use of undercover officers in buying or selling prescription medications, controlled substances, stolen property, firearms, pornography, or other contraband in order to detect and prosecute offenders is authorized by Penal Law § 40.05 (entrapment). Section 40.05 allows a public servant or *259 a person acting in cooperation with a public servant to engage in conduct “affording a person an opportunity to commit an offense”. Such operatives may even resort to “inducement” or “encouragement”, so long as that is not “active” and does not involve the other aspects of entrapment (People v Brown, 82 NY2d 869; People v Pilgrim, 154 AD2d 407, lv denied 75 NY2d 816). These operatives are almost always acting undercover, and they typically receive or transfer contraband whose possession by a private citizen is a crime (cf., e.g., Jacobson v United States, 503 US 540 [child pornography]; Sherman v United States, 356 US 369 [narcotics]; People v Calvano, 30 NY2d 199 [dangerous drugs]; People v Keyes, 193 AD2d 936 [child pornography]; People v Pilgrim, supra [narcotics]). The Legislature must have been aware of this when it enacted section 40.05 in 1965, and when it enacted article 178, 30 years later.
The Attorney-General’s contention therefore entails results not intended by the Legislature, or even by the Attorney-General: (1) If the undercover agent’s conduct in this case was not authorized by law, he was guilty of a criminal diversion act, a crime (see, Penal Law § 178.00 [3] [a]), and of violating the Education Law, a crime (see, Education Law § 6808 [1]; §§ 6810, 6811 [12]); (2) the Attorney-General’s special investigator who gave the pills to the undercover agent was guilty as an accomplice, as was everyone up the chain of command in the Office of Medicaid Fraud who ordered or intentionally aided the sting operation (see, Penal Law § 20.00); (3) enforcement of Penal Law article 178 would be impaired, because use of undercover agents, authorized for all other criminal investigations (see, Penal Law § 40.05), would be effectively outlawed. That would be inconsistent with the “special legislative effort” represented by chapter 81 of the Laws of 1995 to combat fraud and illicit trading in prescriptions and prescription medications (see, Governor’s Mem, op. cit.; cf., People v Mitchell, 77 NY2d 624, 628 [the defendant’s narrow construction of a statute that made possession of a stolen credit card a felony is rejected because it conflicts with the statutory language and would weaken the “special legislative effort” to combat credit card fraud]).
Clearly, the Attorney-General’s investigating agent was “authorized by law to sell” the medications to the defendant (see, Penal Law § 178.00 [3] [b]). As a result, the crime of criminal diversion of prescription medications and prescriptions as it is defined by the statute was impossible.
*260 The evidence before the Grand Jury shows, however, that the defendant believed that the seller was an illegal marketeer, not a public officer enforcing the law. The evidence therefore supports a lesser included charge of an attempt to commit the crime charged (see, Penal Law §§ 110.00, 110.10). Penal Law § 110.10 provides that an attempt to commit a crime occurs if the completed crime is impossible but could have been committed if the circumstances had been as the defendant believed them to be (see, People v Dlugash, 41 NY2d 725 [shooting a corpse is attempted murder if the defendant had an intent to kill and believed that the intended victim was alive]; People v Saunders, 85 NY2d 339 [although the crime of criminal possession of a weapon in the third degree was impossible because the weapon was inoperable, and operability is an element of that crime, there was an attempt to commit that crime because the defendant believed that his gun was operable]; People v Sessions, 181 AD2d 842, lv denied 80 NY2d 837 [crime of attempted criminal sale of a controlled substance is committed when the defendant sells a lawful substance mistakenly believing it to be crack cocaine]).
Penal Law § 110.10 applies when, as here, a person mistakenly believes that another participant in a criminal transaction is acting as a criminal, not as an undercover officer, and the crime is impossible according to its statutory definition because the other participant is an undercover officer. In such cases a charge of a completed crime must be reduced to an attempt to commit the crime (see, People v Zodda, 153 Misc 2d 94, supra; People v Babits, 122 Misc 2d 6, affd 116 AD2d 1047, supra; People v Coleman, 74 NY2d 381 [attempted promoting prostitution in the second degree (attempting to enlist as a prostitute a person less than 16 years old) was committed when the defendant, proposing to become a pimp for a young woman, mistakenly believed her to be a 15-year-old runaway, when she was actually a 24-year-old undercover police officer]; People v Zaborski, 59 NY2d 863 [while it was impossible to commit the crime of criminal possession of stolen property when the defendant received the stolen property from a police agent in a sting operation, the crime of attempted criminal possession of stolen property was established]; People ex rel. Perry v Gillette, 200 NY 275 [although the intended victim of a shakedown paid money to the defendant in an apparent response to the defendant’s threats, he did so while acting on behalf of the police, and therefore the extortion was not consummated; the proper charge was attempt to commit extortion]; People v Bon *261 signore, 21 AD2d 309 [same]; People v Leichtweis, 59 AD2d 383 [the crime of burglary, charged as entering a building “unlawfully” to commit a larceny, was impossible because the security guard whom the defendants had bribed to facilitate their entry was secretly working with his employers to permit defendants’ entry, in order to catch them inside, so their entry was authorized and not unlawful; however, attempted burglary was established because the defendants were unaware of that law enforcement plan]).
By contrast, sale of a controlled substance to an undercover officer, or its possession after a purchase from an undercover officer, is a completed crime, not an attempted crime. That is because the crimes of unlawful possession of a controlled substance and unlawful sale of a controlled substance, as those crimes are defined by statute, are possible even if an undercover officer is involved in the transaction (see, Penal Law §§ 220.03, 220.39 [1]).
III
Another issue presented is whether the exchanges between the seller and the defendant are separate offenses, which must be charged in separate counts, or whether, as the Attorney-General claims, they may be considered as part of one continuing offense, which would permit combining them in one count, as was done here.
CPL 200.30 (1) provides: “Each count of an indictment may charge one offense only.”
“The purpose of this section is to limit each accusation in an indictment to allegation of a single offense. The indictment as a whole may accuse a defendant of as many offenses as can be joined therein pursuant to CPL § 200.20; but each offense must be alleged in a separate accusation, known as a ‘count’, and each count must be limited to allegation of a single offense. A count that accuses a defendant of more than one offense is called ‘duplicitous.’ ” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 200.30, at 437.)
The classic test of whether a single count in an indictment is duplicitous is, “Mould the defendant under it be convicted of either one of the crimes charged therein, should the district attorney elect to waive the other?” (See, People v Klipfel, 160 NY 371, 374, cited in People v Davis, 72 NY2d 32, 38, and People v Keindl, 68 NY2d 410, 417.)
Applying these principles to the language of Penal Law article 178, I find that the present indictment charges three *262 separate offenses in one count: the receipt of Procardia XL on November 7, the receipt of Diflucan on November 7, and the receipt of Procardia XL on November 13.
The core of every crime prohibited by article 178 is a “criminal diversion act”. Each criminal diversion act is a separate crime (Penal Law §§ 178.10, 178.15 [1]). A criminal diversion act is defined in Penal Law § 178.00 (3) (b) to include
“an act or acts in which a person * * *
“receives * * * a prescription medication * * * with knowledge or reasonable grounds to know that the seller * * * is not authorized by law to sell * * * such prescription medication”. In context, and by syntax, the consistent use of the singular— “a prescription medication”, “such prescription medication”— throughout section 178.00 means that a separate criminal diversion act is committed each time a person knowingly buys a particular prescription medication from an unauthorized person. Thus, receipt of each prescription drug on each separate date must be charged as a separate offense, just as possession of cocaine and heroin at the same time must be charged as two separate offenses (see, People v Butler, 161 Misc 2d 980), and separate sales of narcotics must be charged in separate counts (see, People v Okafore, 72 NY2d 81, 86-87). In this respect, the language of article 178 (“a prescription medication”, “such prescription medication”) is comparable to the language of Penal Law article 220 (“a controlled substance”, “a narcotic drug”). Similarly, buying two prescriptions at once is two separate crimes that require two separate counts, just as possessing or passing off two forged prescriptions or two forged checks at the same time with the required mens rea is two separate crimes requiring two separate counts (see, Penal Law § 170.25), and possessing two loaded firearms is two separate crimes requiring two separate counts (cf., People v Acevedo, 178 AD2d 536; People v Igartua, 171 AD2d 547, lv denied 78 NY2d 923).
The Attorney-General relies on the words “act or acts” in the definition of a criminal diversion act (Penal Law § 178.00 [3] [emphasis added]) to support the claim that the statute permits the combining of several exchanges of different medications into one count. But in the context of the full definition the word “acts” does not refer to exchanges of multiple medications or prescriptions; it refers to the separate overt acts that may make up one exchange of one medication or prescription (cf., People v Aksoy, 84 NY2d 912 [each false insurance claim is a separate crime, although each claim can be made up of several overt acts]).
*263 The prosecution also relies on People v Cox (286 NY 137, 142), which holds that grand larceny can be made up of multiple petty larcenies (see also, People v Rosich, 170 AD2d 703, lv denied 77 NY2d 1000). In Cox the Court of Appeals stated the test for determining whether this type of continuing crime may be charged: “ Where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse’ ” between the petty larcenies. (People v Cox, at 142.) The Attorney-General contends that because in this case the defendant bought the medications from the same seller, each act was in execution of a general fraudulent scheme, and the individual transactions are part of one continuing crime.
The comparison of the defendant’s acts to grand larceny is faulty. It may well be that two purchases of amounts of the same medication from the same source, pursuant to a prearranged scheme and a single criminal impulse, may be charged as one crime. But in this case there were two medications, Procardia XL and Diflucan. Moreover, as to Procardia XL, there were two discreet transactions, one on November 7 and the other on November 13, and there was no prearranged plan formulated by the buyer and seller in advance regarding transactions in Procardia XL. Even if the two strengths of Procardia XL — 90-mg and 60-mg — must be considered different doses of the same “prescription medication”, the defendant received them on separate dates, as the result of separate, independent impulses, so there were two criminal diversion acts involving this medication. “[A] count of an indictment that charges repeated instances of a particular offense during a designated period of time encompasses more than one offense and is duplicitous” (Preiser, op. cit., at 439; see also, People v Okafore, supra; People v Jiminez, 239 AD2d 360 [“A count is duplicitous where it alleges the commission of a particular offense occurring repeatedly during a designated period of time”]). Since two medications were involved, and Procardia XL was received on two dates, there were three criminal diversion acts, and three counts were required.
CONCLUSION
The charge of criminal diversion of prescription medications and prescriptions in the third degree is reduced to attempted *264 criminal diversion of prescription medications and prescriptions in the fourth degree. The People will either (1) elect by the next scheduled court date which offense they wish to keep in the count — the receipt of Procardia XL on November 7, the receipt of Diflucan on November 7, or the receipt of Procardia XL on November 13 (cf., People v Retti, 224 AD2d 333, lv denied 88 NY2d 940; People v Horne, 121 Misc 2d 389, 394); or (2) represent the case to the Grand Jury, within 45 days of the date of this decision, and seek three separate counts of attempted criminal diversion of prescription medications and prescriptions in the fourth degree, either in a prosecutor’s information or in an indictment, as the Grand Jury sees fit; or (3) file in the Criminal Court a prosecutor’s information containing those three charges, after dismissal of the indictment.